TROY B. WILLIAMS *v.* STATE OF CONNECTICUT, JUDICIAL BRANCH, ET AL.
(AC 31630)

Robinson, Alvord and Peters, Js.

Argued September 14—officially released November 2, 2010

*Troy B. Williams*, pro se, the appellant (plaintiff).

*Kenneth H. Kennedy, Jr.*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal,*

attorney general, and *Philip M. Schulz*, assistant attorney general, for the appellee (named defendant).

*Opinion*

PER CURIAM. The plaintiff in this workers' compensation matter, Troy B. Williams, appeals from the decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner (commissioner) dismissing his claim for benefits under the Workers' Compensation Act, General Statutes § 31-275 et seq., against the defendant, the state of Connecticut, judicial branch.[1] On appeal, the plaintiff claims that (1) the board improperly upheld the commissioner's finding that the plaintiff engaged in wilful and serious misconduct, and (2) the commissioner improperly failed to draw an adverse inference against the defendant on the basis of spoliation of evidence.[2] We affirm the decision of the board.

The following facts and procedural history are necessary to the resolution of the plaintiff's appeal. At the time of the incident giving rise to this appeal, the plaintiff was employed by the defendant as a juvenile transportation officer (officer).[3] On May 6, 2005, the plaintiff

---

[1] GAB Robins North America, Inc., the workers' compensation administrator for the state of Connecticut judicial branch, is also a defendant in this case but has not participated in this appeal. For convenience, we refer in this opinion to the state as the defendant.

[2] In his brief on appeal, the plaintiff also contends that (1) the defendant violated "the Connecticut Rules of Practice, Connecticut General Statutes, case law and the spirit and intent of the Workers' Compensation Act . . . along with the free flow and disclosure of information and documentation between the parties and with the Commission," and (2) the commissioner violated his "right to due process and the basic right to be afforded a full and fair trial . . . ." We consider these claims to be both without merit and inadequately briefed, and thus decline to review them. See *Paoletta* v. *Anchor Reef Club at Branford, LLC*, 123 Conn. App. 402, 406, 1 A.3d 1238 (2010) ("[w]e are not required to review claims that are inadequately briefed" [internal quotation marks omitted]).

[3] The officer position required the plaintiff to transport detainees to court appearances, medical appointments and other appointments, and to maintain control of detainees when their behavior became physically threatening

participated in a basketball game in a gym with seven detainees at the Hartford Juvenile Detention Center.[4] At some point during the game, the plaintiff jumped in the air, knocked the ball out of a detainee's hands and began walking away. Although the plaintiff had an opportunity to continue to walk away, he turned around when the detainee said something. He walked toward the detainee until the two stood chest to chest. Shortly thereafter, a physical confrontation ensued when the plaintiff lunged toward the detainee and grabbed him under the arms, at which point the plaintiff almost landed on his knees when he lost his balance. As the plaintiff continued to hold onto the detainee, he regained his balance and continued to lunge forward. Two officers intervened in the struggle and restrained the detainee.

The plaintiff submitted a workers' compensation claim for injuries resulting to his back, neck, right wrist, ribs and right knee. At a hearing before the commissioner, the plaintiff claimed that his injuries arose out of and in the course of his employment. The defendant argued that the plaintiff was not entitled to benefits because his injuries were caused by wilful and serious misconduct within the meaning of General Statutes § 31-284 (a).[5] On June 11, 2008, the commissioner ruled in favor of the defendant, finding that the plaintiff "did

to themselves or to others. As an officer, the plaintiff received training in restraint and crisis intervention techniques.

[4] The commissioner's findings reveal that it is appropriate behavior for an officer, after transporting detainees, to remain in the facility and to participate in basketball games with detainees.

[5] General Statutes § 31-284 (a) provides in relevant part: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee . . . ."

not use proper restraint and crisis intervention techniques" but instead "used unauthorized and unnecessary force against the detainee, which constituted wilful and serious misconduct for [an officer]." As a result, the commissioner dismissed the plaintiff's claim.[6] The plaintiff appealed from the commissioner's decision to the board, which upheld the commissioner's decision. This appeal followed.

We begin by setting forth the standard of review applicable to workers' compensation appeals. "The principles that govern our standard of review in workers' compensation appeals are well established." *Cervero* v. *Mory's Assn., Inc.*, 122 Conn. App. 82, 90, 996 A.2d 1247, cert. denied, 298 Conn. 908, 3 A.3d 68 (2010). "The board sits as an appellate tribunal reviewing the decision of the commissioner. . . . [T]he review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [T]he power and duty of determining the facts rests on the commissioner . . . ." (Citation omitted; internal quotation marks omitted.) *Paternostro* v. *Arborio Corp.*, 56 Conn. App. 215, 218–19, 742 A.2d 409 (1999), cert. denied, 252 Conn. 928, 746 A.2d 788 (2000). "[T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . ." *Keenan* v. *Union Camp Corp.*, 49 Conn. App. 280, 286, 714 A.2d 60 (1998). "Where the subordinate facts allow for diverse inferences, the commissioner's selection of the inference to be drawn must stand unless it is based on an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." *Paternostro* v. *Arborio Corp.*, supra, 219; see also *Marroquin* v. *F. Monarca Masonry*, 121 Conn. App. 400, 413, 994 A.2d 727 (2010).

---

[6] The plaintiff submitted a forty-seven page motion to correct, which the commissioner granted only to correct a few scrivener's errors.

"This court's review of decisions of the board is similarly limited. . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [W]e must interpret [the commissioner's finding] with the goal of sustaining that conclusion in light of all of the other supporting evidence. . . . Once the commissioner makes a factual finding, [we are] bound by that finding if there is evidence in the record to support it." (Citations omitted; internal quotation marks omitted.) *Paternostro* v. *Arborio Corp.*, supra, 56 Conn. App. 219.

I

First, the plaintiff claims that the board improperly upheld the commissioner's finding that the plaintiff engaged in wilful and serious misconduct. Specifically, the plaintiff claims that the commissioner's conclusion that the plaintiff's restraint techniques constituted wilful and serious misconduct was not supported by the record. We disagree.

Section 31-284 (a) provides in relevant part that "compensation shall not be paid when the personal injury [to the employee] has been caused by the wilful and serious misconduct of the injured employee . . . ." Our Supreme Court has recognized that "wilful and serious misconduct means something more than ordinary negligence." *Gonier* v. *Chase Cos.*, 97 Conn. 46, 56, 115 A. 677 (1921); accord *Greene* v. *Metals Selling Corp.*, 3 Conn. App. 40, 45, 484 A.2d 478 (1984). "[S]erious misconduct is wrong or improper conduct of a grave and aggravated character, and this is to be determined from its nature and not from its consequences. . . . The exposure by an employee of himself to injury would be misconduct if he knew of and appreciated his liability

to injury, and would be serious misconduct if the circumstances indicated that the misconduct, in the light of his knowledge, was of a grave and aggravated character, and that he appreciated this fact." *Mancini* v. *Scovill Mfg. Co.*, 98 Conn. 591, 597, 119 A. 897 (1923).

"Not only must the misconduct be of this grave character, but under the statute it must also be wilful." *Gonier* v. *Chase Cos.*, supra, 97 Conn. 55. "Wilful misconduct differs from serious misconduct, in that the former may be any kind of wrong or improper conduct, while the latter must be the conduct which is not only wrong or improper, but also of a grave and aggravated character. Further, wilful misconduct must be either intentional misconduct, that is, such as is done purposely with knowledge, or misconduct of such a character as to evince a reckless disregard of consequences to him who is guilty of it." (Internal quotation marks omitted.) *Mancini* v. *Scovill Mfg. Co.*, supra, 98 Conn. 597–98. "Reckless misconduct is highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) *Paternostro* v. *Arborio Corp.*, supra, 56 Conn. App. 221.

After reviewing the record, we conclude that the evidence presented was adequate to support the commissioner's finding that the plaintiff's use of force against the detainee constituted wilful and serious misconduct. The evidence before the commissioner revealed that coming chest to chest with a detainee and grabbing him under the arms was not a proper restraint technique, even under emergency circumstances, because of the possibility of injury to both the officer and the detainee. According to the other officers who were present and the plaintiff's supervisor, a proper technique under the circumstances would have included approaching the detainee from an angle, or walking away from the detainee, instructing the detainee to calm

down and asking for assistance from one of the other officers present.[7] Moreover, by his own admissions, the plaintiff conceded that coming face to face with a detainee was not a proper technique, and that he had been taught to keep a safe distance from a detainee and to approach from an angle during a confrontation.

Therefore, we reject the plaintiff's claim that the board improperly upheld the commissioner's finding that the plaintiff engaged in wilful and serious misconduct.

## II

Second, the plaintiff claims that the commissioner improperly failed to draw an adverse inference against the defendant on the basis of spoliation of evidence. Specifically, the plaintiff claims that the commissioner was required to draw an adverse inference against the defendant because it did not produce the footage from a second surveillance camera that was operating in the gym at the time of the incident. We disagree.

The following additional facts are relevant to the resolution of the plaintiff's second claim on appeal. At the time of the incident, two surveillance cameras were operating in the gym. At the hearing before the commissioner, the defendant provided the footage from one camera but was unable to provide the footage from the second camera. Jennifer Bott, the deputy superintendent of the Hartford Juvenile Detention Center, explained that the cameras in the gym typically tape over themselves in approximately thirty days unless the

---

[7] We reject the plaintiff's argument to the extent that he argues that the commissioner erred by not accepting his testimony as the true version of the facts. "Because the commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses," it was properly within the commissioner's discretion to rely on all, part or none of the plaintiff's testimony in reaching the decision. *Keenan* v. *Union Camp Corp.*, supra, 49 Conn. App. 286.

facility captures the footage within that time period. Bott testified that, although she could not recall viewing the footage from the second camera before it was lost, she believed that, based on the camera's positioning, it would not have covered the area of the gym where the incident occurred. She also testified that had the camera captured any part of the incident, the footage would have been saved, as it had been in other situations involving questionable incidents.

In *Beers* v. *Bayliner Marine Corp.*, 236 Conn. 769, 775, 675 A.2d 829 (1996), our Supreme Court "adopt[ed] the rule of the majority of the jurisdictions that have addressed the issue [of spoliation of evidence] in a civil context, which is that the trier of fact *may* draw an inference from the intentional spoliation of evidence that the destroyed evidence would have been unfavorable to the party that destroyed it." (Emphasis added.) "To be entitled to this inference, the victim of spoliation must prove that: (1) the spoliation was intentional, in the sense that it was purposeful, and not inadvertent; (2) the destroyed evidence was relevant to the issue or matter for which the party seeks the inference; and (3) he or she acted with due diligence with respect to the spoliated evidence. . . . We emphasized that the adverse inference is permissive, and not mandatory . . . ." (Citation omitted.) *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 237, 905 A.2d 1165 (2006).

In the present case, even if we assume, without deciding, that the plaintiff produced evidence sufficient to permit the commissioner to draw an adverse inference, the decision as to whether or not to draw such an inference was within the discretion of the commissioner. See *Surrells* v. *Belinkie*, 95 Conn. App. 764, 771, 898 A.2d 232 (2006). Despite the plaintiff's argument to the contrary, the commissioner was not *obligated* to draw an adverse inference against the defendant simply because it failed to save the footage from the second

camera before it was recorded over. After reviewing the record, we conclude that the testimony provided by Bott was sufficient to support the commissioner's decision not to draw an adverse inference, and we will not second-guess his determination of the credibility of the witness. See *Keenan* v. *Union Camp Corp.*, supra, 49 Conn. App. 286.

Therefore, we reject the plaintiff's claim that the commissioner improperly failed to draw an adverse inference against the defendant.

The decision of the workers' compensation review board is affirmed.